IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

SUZANNE E. BRADLEY )
)
v. ) NO. 1:12-0045
)
WAL-MART STORES, EAST, LP[1] )

**MEMORANDUM**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties in this action have consented to have the Magistrate Judge conduct any and all further proceedings in the action, including the entry of a final judgment. See Docket Entry Nos. 12-13.

Presently pending before the Court is the Defendant's Motion for Summary Judgment (Docket Entry No. 27), to which the Plaintiff has filed a Response (Docket Entry No. 33). Also before the Court is the Defendant's Reply (Docket Entry No. 37). For the reasons set out below, the Defendant's motion will be granted.

**I. BACKGROUND**

The Plaintiff is a resident of Tennessee. On May 4, 2011, she was a customer in the Wal-Mart Store ("the Store") in Lawrenceburg, Tennessee, when she slipped on a liquid that was on the tiled floor of the Store and fell. She suffered injuries as a result of the fall which have required medical treatment and have limited her ability to earn a living. On May 1, 2012, the Plaintiff filed an action in the Circuit Court for Lawrence County, Tennessee, against the Defendant seeking no less than $250,000.00 in damages based on a claim that the Defendant was negligent in failing to keep the walkways of the Store free of hazards to its customers. The action was removed to this

---

[1] By Orders entered June 12, 2012 (Docket Entry Nos. 7-8), Wal-Mart Stores East, LP was substituted for Wal-Mart Stores, Inc., as the sole defendant in this case.

Court by the Defendant on May 31, 2012, pursuant to 28 U.S.C. § 1441. See Docket Entry No. 1. The parties have engaged in discovery, and the action is set for a trial by jury.

The parties agree that the Plaintiff fell at approximately 1:45 p.m. that day and that she fell in the area behind checkout line #5 at the Store, which is located in what the Defendant refers to as "Action Alley," a term describing an open area that runs throughout the Store and encompasses the open area behind the row of checkout registers. Although this area is videotaped in the regular course of business, because of the angle and field of view of the cameras, there was no surveillance video of the exact spot where the Plaintiff fell and no video of the actual fall.[2] Four still photographs of the floor with the liquid on it were taken after the Plaintiff's fall and show the presence of a liquid on the floor. See Docket Entry No. 32. The type of liquid was never identified through testing and the Plaintiff only describes it as "sticky" and that it did not look like "a drink or water."[3] However, the Defendant's employees who observed the liquid after the Plaintiff fell believed it to be "chicken juice," referring to the juice that is present with raw chicken, and there has been no other proof offered by the Defendant indicating that the liquid was anything other than chicken juice.[4]

It is undisputed that there is no evidence showing that any employee of the Defendant caused the liquid to be on the floor or that any employee of the Defendant actually knew that the liquid was

---

[2] See Deposition of Jeremy Rhodes (Docket Entry No. 34-2), at 2, pp. 35-36 of deposition; Affidavit of Jeremy Rhodes (Docket Entry No. 27-1), at ¶ 7.

The Plaintiff raises an argument that, because the surveillance videos made on May 4, 2011, were not preserved but were destroyed by the Defendant after thirty days pursuant to its normal business practice, the Defendant should not be permitted to present Mr. Rhodes' recollections of his review of the videos and, further, the Plaintiff is entitled to an adverse inference in her favor regarding what the videos showed. See Plaintiff's Concise Statement of Additional Facts (Docket Entry No. 35), at 6-7. The Court is not persuaded by this argument or the Plaintiff's reliance on Beaven v. United States DOJ, 622 F.3d 540, 553 (6th Cir. 2010). The facts surrounding the destruction of the video tapes do not support the imposition of any adverse inference or any type of limitation on the testimony of Mr. Rhodes.

[3] See Deposition of the Plaintiff (Docket Entry No. 27-2), at 1.

[4] See Deposition of Melissa Weathers (Docket Entry No. 35-1), at 5, p. 42 of deposition; Deposition of Jeremy Rhodes (Docket Entry No. 34-2), at 2, p. 33, and 5, p. 50 of deposition; Affidavit of Jeremy Rhodes (Docket Entry No. 27-1), at ¶ 4;

on the floor prior to the Plaintiff's fall. See Plaintiff's Response to the Defendant's Statement of Material Facts (Docket Entry No. 34), at ¶¶ 2-3.

There is no conclusive evidence of how the liquid came to be on the floor, although both parties theorize that the liquid more than likely dripped out of a package of raw chicken that another customer had purchased at checkout line #5 prior to the Plaintiff's fall. It is undisputed that the record of cash register receipts for register #5 shows that at least ten customers purchased raw chicken at register #5 at some point between 11:47 a.m. and 1:25 p.m. See Docket Entry No. 34, at ¶ 6; Defendant's Response to Plaintiff's Statement of Additional Material Facts (Docket Entry No. 38), at ¶¶ 5-13. In much the same manner as there is no conclusive evidence about where the liquid came from, there is no conclusive evidence of how long the liquid was present on the floor prior to the Plaintiff's fall. It is undisputed that there is no evidence of any person observing the liquid prior to the Plaintiff's fall. The area of the fall was cleaned by the Defendant's maintenance employees at approximately 12:00 p.m. on the day in question,[5] suggesting that the liquid was not present at that time. According to the deposition testimony of the Defendant's employees, the employees are trained to conduct safety sweeps and to promptly address potentially dangerous conditions and that two to three customer service managers are normally monitoring the Action Alley.[6] However, there are no logs in the record memorializing the time of any visual inspection of the area surrounding the Plaintiff's fall. Jeremy Rhodes, the former Asset Protection Manager at the Store, attested in his affidavit that his review of the video surveillance footage did not show any Store employees in the area surrounding the Plaintiff's fall in the twenty minutes preceding the fall.[7]

Although the Plaintiff argues that "the unequivocal proof is that the defendant knows from where the substance came and how long prior to the fall it was on the floor," see Plaintiff's

---

[5] See Defendant's Responses to Interrogatories (Docket Entry No. 35-4), at ¶ 20.

[6] See Deposition of Rod Hamilton (Docket Entry No. 35-3), at 2, pp. 19-21, and at 3, pp. 38-40 of Deposition; Deposition of Melissa Weathers (Docket Entry No. 35-1), at 4-5, pp. 39-41.

[7] See Docket Entry No. 27-1, at ¶ 8.

Memorandum (Docket Entry No. 5), the Court does not agree. Although Mr. Rhodes offered testimony in his deposition that the chicken juice came from the customer who brought chicken through checkout line #5 approximately 20 minutes prior to the Plaintiff's fall,[8] he acknowledged that there was no direct proof of where the chicken juice came from and the record contains no conclusive proof of where the chicken juice in question came from. The Court finds that the Defendant has not made, through either the testimony of Mr. Rhodes or the argument made in its supporting memorandum, an admission regarding the specific source of the chicken juice or how long the chicken juice had been present on the floor prior to the Plaintiff's fall.

## II. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

---

[8] See Docket Entry No. 34-2, at 3, p. 39 of Deposition of Jeremy Rhodes.

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

### III. ANALYSIS

A federal court sitting in a diversity case generally applies the substantive law of the forum state. Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009); Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011). Neither party has argued that Tennessee law does not apply. Accordingly, the Court shall apply Tennessee law to the dispute.

The Plaintiff sues the Defendant for negligence arguing that the presence of the liquid on the floor of its store was a hazard about which the Defendants should have known and should have cleaned up. To establish negligence, the Plaintiff must prove: (1) a duty of care owed by the Defendant to Plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995); Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).

Negligence is not to be presumed by the mere happening of an injury or accident, Friedenstab v. Short, 174 S.W.3d 217, 219 (Tenn.Ct.App. 2004), and businesses are not insurers of their customers' safety. Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004). However, a business owner must "exercise reasonable care to its business invitees to make the premises safe." Williams v. Goodyear Tire & Rubber Co., 2012 WL 1228391, *5 (W.D. Tenn. Apr.11, 2012) (quoting Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998)); Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998); Longmire v. The Kroger Co., 134 S.W.3d 186, 188 (Tenn.Ct.App. 2003). That duty includes the obligation to remove, repair, or warn against latent or hidden dangers and defective conditions on the premises about which the business owner was aware or should have been aware by the exercise of reasonable diligence. Rice, supra; Blair v. Campbell, 924 S.W.2d 75, 76 (Tenn. 1996); Eaton v. McLain, 891 S.W.2d 593-94 (Tenn. 1994). In the context of a premises liability case, such as the instant case, when the condition causing the Plaintiff's injury is created by someone other than the Defendant, a business owner breaches the duty of care owed to its customers when the business owner had actual or constructive notice that the dangerous condition or defect existed prior to the injury. Morris v. Wal–Mart Stores, Inc., 330 F.3d 854, 858 (6th Cir. 2003); Blair, supra; Martin v. Washmaster Auto Center, USA, 946 S.W.2d 314, 318 (Tenn.Ct.App. 1996).

The Plaintiff does not allege that the Defendant had actual knowledge that the liquid causing the Plaintiff's fall was on the floor of the Store prior to the fall. Accordingly, the Plaintiff's claim is premised upon the theory that the Defendant had constructive knowledge of the condition.

Constructive knowledge can be shown by proving the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of such condition. Martin, supra. See also Simmons v. Sears, Roebuck and Co., 713 S.W.2d 640, 641 (Tenn. 1986). A plaintiff can also prove constructive notice through "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." Blair, 130 S.W.3d at 765-66. However, the Plaintiff has not attempted to make such a showing. [9]

In the instant case, the Court finds that there is simply insufficient evidence in the record to create genuine issues of material fact that must be resolved by the jury and which, if found in favor of the Plaintiff, would support a finding of liability against the Defendant based upon a theory of constructive notice. There is evidence upon which a jury could reasonably conclude that the substance on which the Plaintiff fell was chicken juice and, further, a jury could reasonably infer that the only plausible explanation for how such chicken juice came to be on the floor is that it leaked from a package of raw chicken. However, even if the Court presumes these facts in favor of the Plaintiff, there is insufficient evidence before the Court upon which a jury could reasonably conclude that the chicken juice had been on the floor long enough to support a finding of constructive knowledge on the part of the Defendant. Accordingly, there is no basis upon which a jury could reasonably conclude that the Defendant was negligent because the chicken juice was not cleaned up prior to the Plaintiff's fall.

Both parties theorize that the chicken juice must have leaked from a package of raw chicken that had been carried by a customer through checkout line #5. However, the record shows that the Plaintiff did not actually fall in checkout line #5 but in the open area of Action Alley located behind

---

[9] In her complaint, the Plaintiff asserts that the Defendant is liable pursuant to the doctrine of res ipsa loquitur, which permits a fact finder to infer negligence from the circumstances surrounding an injury. See Seavers v. Methodist Med. Ctr., 9 S.W.3d 86, 91 (Tenn. 1999). However, it cannot be inferred from the mere fact that a patron in a store falls that negligence of a store owner was the cause of the fall, and the Plaintiff, in arguing that this case should proceed to trial, has not presented an argument supporting liability based on such a theory. The Court finds that liability pursuant to res ipsa loquitur does not apply based on the facts of the instant case.

7

checkout line #5. It is unsupported speculation to conclude that the chicken juice came to be at the spot of the Plaintiff's fall because of a customer who went through checkout line #5 as opposed to a customer who passed by that spot on his or her way to another checkout line or to another area of the Store. Furthermore, even if the jury could reasonably make an inference that the chicken juice leaked from a package of raw chicken that had been brought by a customer through checkout line #5, there is no evidence that the chicken juice can be linked to any particular customer who came through checkout line #5, which would have established a beginning time point for the presence of the chicken juice on the floor. The record shows that nine customers purchased raw chicken through checkout line #5 between the time the floor in Action Alley was swept at 12:00 p.m. and the time the plaintiff fell at 1:45 p.m. It would be pure conjecture for the jury to conclude that the spilled chicken juice can be linked to any one of these specific customers and, thus, that the chicken juice had been present on the floor for any specific period of time.

Slip-and-fall, premises liability cases are highly factually specific and there are a plethora of cases that can be cited by both sides in favor of their contentions that this case either should or should not proceed to trial. Given the speculative nature of the evidence of how long the chicken juice had been on the floor at the Store and the affirmative evidence of the Defendant's practice of regularly checking the floors of its store, the Court finds more persuasive those cases in which constructive notice was not attributed to a Defendant and summary judgment was granted in a defendants' favor because of a dearth of evidence of when and how a dangerous condition came about or because the evidence, even when viewed in the light most favorable to the plaintiff, showed that the condition existed for only a short period of time. See Martin v. Wal-Mart Stores, Inc., 2005 WL 2993931 (6th Cir. Nov. 7, 2005); Person v. Wal-Mart Stores, Inc., 921 F.2d 276 (6th Cir. 1990) (unpublished decision); Compton v. Wal-Mart Stores, E., LP, 2008 WL 2783518 (M.D.Tenn. July 16, 2008); Rogers ex rel. Wright v. Autozone Stores, Inc., 2012 WL 3594342 (Tenn.Ct.App. Aug. 21, 2012); White v. BI-LO, LLC, 2008 WL 4415781 (Tenn.Ct.App. Sept. 26, 2008); Basily v. Rain, Inc., 29 S.W.3d 879 (Tenn.Ct.App. 2000); Ogle v. Winn-Dixie Greenville, Inc., 919 S.W.2d

45 (Tenn.Ct.App. 1995); Sutherland v. Food Lion, Inc., 1994 WL 108889 (Tenn.Ct.App. Mar. 30, 1994); Frazier v. Revco Disc. Drug Centers, Inc., 1992 WL 247792 (Tenn.Ct.App. Oct. 2, 1992); Jones v. Zayre, Inc., 600 S.W.2d 730 (Tenn.Ct.App. 1980).

Although the Plaintiff correctly points out that other factors, such as "the nature of the business, its size, the number of patrons, the nature of the danger, its location along with the foreseeable consequences," may be relevant to the determination of whether a defendant had constructive notice of a dangerous condition, see Paradiso v. Kroger Co., 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973), the Plaintiff has not made a persuasive argument that evidence of any of these factors supports a finding of constructive notice in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment will be granted. An appropriate order shall be entered.

_____
JULIET GRIFFIN
United States Magistrate Judge